IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV535-MU

| | |
|---|---|
| MICHAEL TODD POPE *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| TT OF LAKE NORMAN, LLC d/b/a ) | |
| LAKE NORMAN DODGE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court upon Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**FACTS**

Plaintiffs brought this purported class action suit against the Defendant TT of Lake Norman, LLC d/b/a Lake Norman Dodge ("Lake Norman") alleging that they have suffered damages as a result of Defendant's sales to the Plaintiffs of vehicles which are equipped with a window etching system known as Secure Etch Silent Guard Security System ("Etch"). Etch is a product sold by Fidelity Warranty Services, Inc. ("Fidelity") which purports to deter theft of vehicles by making resale of stolen vehicles containing the Etch product more difficult and risky for car thieves. Etch is included on all vehicles sold by the Defendant, and customers do not have the option to purchase a vehicle from the Defendant that does not contain Etch.

On December 30, 2005, Plaintiff Michael Todd Pope ("Pope") bought a used 2005 Dodge

Ram Truck from Lake Norman. Pope's retail installment contract ("RIC") reflects a charge of $349 for the Etch product. Subsequently, on April 24, 2005, Bryan Keith Wood and Teresa Fields Wood ("the Woods") bought a new 2005 Jeep Wrangler from Lake Norman. The Woods' RIC also reflects a charge of $349 for the Etch product. The Etch product, which is the center of this controversy, consists of a small number applied to the windshield or other windows of a vehicle with a kit consisting of a piece of scored paper and a dab of chemical. Etch also includes a guarantee by Fidelity to pay $5000 to any customer whose car is stolen and not recovered within 30 days. Because of this, Plaintiffs allege that Etch constitutes "insurance" and was sold by Lake Norman without a license from the state insurance department. Most of the claims in Plaintiffs' Amended Complaint hinge on Plaintiffs' allegation that Etch is insurance.

Plaintiffs assert that because Etch is indeed insurance, the "amount financed" and the "finance charge" listed on their RIC s were miscalculated, and that the Defendant failed to make certain insurance-related disclosures. They claim that this conduct violated the Truth in Lending Act ("TILA") (Count One), the North Carolina Motor Vehicle Dealers and Manufacturers Licensing Law ("Dealer Act") (Count Two), and the North Carolina Retail Installment Sales Act ("NCRISA") (Count Five). They also assert that Defendant's unauthorized offering of Etch violated the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") (Count Three), and that the lack of a license rendered their Etch agreements void ab initio (Count Four), that they are entitled to injunctive and declaratory relief (Count Six), and that their Etch purchases were unconscionable (Count Seven).[1] Defendant contends that Etch is not insurance, but rather a warranty pursuant to N.C.Gen.Stat. § 58-1-15(b), and thus all Plaintiffs' claims

---

[1] Plaintiffs have requested leave to withdraw Count Seven.

should be dismissed as a matter of law.

## DISCUSSION

A motion to dismiss for failure to state a claim upon which relief may be granted should be allowed if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. Greenhouse v. MCG Capital Corp., 392 F.3d 650, 655 (4th Cir 2004). A motion to dismiss should be granted if the complaint itself fails to allege the elements for a cause of action or facts sufficient to support such elements. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.), cert. denied, 540 U.S. 940 (2003). Moreover, "allegations must be stated in terms that are neither vague nor conclusory." Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 220 (4th Cir. 1994).

The Defendant moves to dismiss on the basis that Etch is a "warranty" under N.C.Gen.Stat. § 58-1-15(b), and therefore, as a matter of law, does not constitute insurance. Section 58-1-15(b) provides:

> Any warranty made solely by a manufacturer, distributor, or seller of goods or services without charge . . . that guarantees indemnity from defective parts, mechanical or electrical breakdown, labor, or any other remedial measure, including replacement of goods or repetition of services, shall not be a contract of insurance under Articles 1 through 64 of this Chapter . . .

A reading of the Plaintiffs' Complaint and a review of the Etch form itself, which is referenced in Plaintiffs' Complaint reveals that Etch meets the requirements for a "warranty"

3

under § 58-1-15(b).[2] Plaintiffs allege that Etch is a theft deterrent consisting of a unique identifying number acid-etched on the vehicle's windows. Compl. ¶¶ 6, 7. They allege that Etch is sold for $349 by Fidelity. Compl. ¶¶ 5, 16, 26-28, 32-33, 35. They further allege that Etch includes a guarantee to pay $5000 in the event it fails to deter theft of the car (which falls under the "any other remedial measure" provision in § 58-1-15(b)). Compl. ¶ 10. There is no allegation of an additional, dedicated price for the guarantee. Moreover, the payment is offered by Fidelity, which Plaintiffs allege is also the seller of Etch. Compl. ¶ 5. The Etch forms specifically provide that Etch is a theft deterrent system which includes a limited warranty. The forms state that the theft deterrent system consists of a unique number etched into the windows which is designed to deter theft and assist authorities in the recovery of the stolen vehicle. The form also provides that for three years from the date of purchase, if the vehicle is stolen and not recovered within thirty days, the purchaser is entitled to a Limited Warranty benefit of $5000. Thus, Etch fits squarely within § 58-1-15(b)'s definition of a warranty.

The North Carolina Attorney General has issued an advisory letter, of which this court takes judicial notice, indicating that another manufacturer's similar product is not insurance because of § 58-1-15(b). (Defendant's Motion to Dismiss, Ex. 1). The North Carolina Department of Insurance had requested the assistance of the Attorney General's Office in determining whether a Florida company was transacting business in North Carolina as an unauthorized insurer. The Florida company offered a theft deterrent product through automobile dealers in this state. The product consisted of "an etching of the product tracking number and a

---

[2] The Etch forms are properly considered by the court on a motion to dismiss because they are explicitly referenced in Plaintiffs' Complaint. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

4

phone number to a national database that maintains a record of who the owner is and information for returning the stolen vehicle to the owner." Id. Like the Etch product, the system was sold for $349 and the seller guaranteed the customer a predetermined fee if the vehicle was stolen and not recovered within thirty days. Id. The Attorney General's Office concluded that this product fell within the warranty provisions of § 58-1-15(b). Id. Since Etch is materially identical to the product considered by the Attorney General's Office, the conclusion regarding the applicability of §58-1-15(b) would likely apply to Etch as well. The court understands that the Attorney General's advisory letter is not a formal opinion, however, in the absence of any referral mechanism to the North Carolina courts, this opinion is indisputably the most authoritative statement of § 58-1-15(b)'s application to window-etching products like Etch.

The Attorney General's conclusion is also persuasive in that it reflects the well-settled principle that "a warranty covers defects in the article sold while insurance indemnifies against damage from perils outside the article." GAF Corp. v. County School Brd., 629 F.2d 981, 983 (4th Cir. 1980). In this case, it is clear that Etch's limited warranty protects customers in the event the product fails as a theft deterrent. Accordingly, to the extent that Plaintiffs' claims are based upon their allegations that Etch is insurance, these claims are dismissed.

Plaintiffs assert that their NCUDTPA claim is based not only on their allegations that Etch is insurance, but also on Defendant's practice of selling Etch as a non-optional product. Defendant argues that Plaintiffs do not state a claim concerning the alleged mandatory inclusion of Etch in all of Defendant's deals. Plaintiffs cite several cases in support of their argument that Defendant's practice of selling Etch as a non-optional product is in violation of the NCUDTPA. However, in each of the cited cases, the defendants either deceived customers into thinking that

certain products were required to obtain financing, or that certain products were free when they were not. There is no allegation in the Complaint that Plaintiffs were deceived into believing that Etch was required for financing or that Etch was free. The RIC clearly showed a charge of $349 for Etch, and the Plaintiffs were told by the Defendant's salespersons that Etch was not optional, but was included on every vehicle. Defendant's decision to include Etch on every vehicle was a business decision and any customer who insisted on purchasing a vehicle without Etch was free to buy from another dealership. In sum, there is no allegation that the Defendant did not disclose the inclusion of Etch, or misrepresented that it was required for financing.

Plaintiffs further argue that they were deceived because the Etch form which customers are required to sign states that the purchase of Etch is not required to purchase the vehicle, while in reality Defendant required all customers to buy Etch. To state a claim under NCUDTPA, Plaintiffs must allege that there was "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) *which proximately caused actual injury to the plaintiff or to his business*." Brinkman v. Barrett Kays & Assocs., P.A., 155 N.C.App. 738, 743, 575 S.E.2d 40, 44 (2003) (emphasis added). There can be no recovery "where the complaint fails to demonstrate that the act of deception proximately resulted in some adverse impact or actual injury to the plaintiffs." Walker v. Sloan, 137 N.C.App. 387, 399, 529 S.E.2d 236, 245 (2000). The allegations of the Complaint do not establish any proximate cause. Plaintiffs have failed to adequately allege any causal connection between a statement on the Etch form stating that the product is optional and their purported injury. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989) ("[E]ven if the statements did have a deceptive quality within the meaning of the Act, . . . [the plaintiff] has not shown that he 'suffered *actual*

6

*injury* as a *proximate result*' of the statements.") (emphasis in original) (citing Ellis v. Smith-Broadhurst, Inc., 48 N.C.App. 180, 184, 268 S.E.2d 271, 273-74 (1980)).  The allegations in the Complaint are that the Plaintiffs knew that the Defendant's policy was to require Etch in every deal, and they purchased it anyway.  Because Plaintiffs have not alleged facts that satisfy NCUDTPA's proximate causation requirement, their NCUDTPA claim must be dismissed.

For the reasons stated above,

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby GRANTED, and the Complaint is dismissed in its entirety;

Signed: August 28, 2007

Graham C. Mullen
United States District Judge